## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RONNIE JONES (#117519)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 19-786-SDD-RLB**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 9, 2023.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RONNIE JONES (#117519)**

**VERSUS**

**DARREL VANNOY, ET AL.**

CIVIL ACTION

NO. 19-786-SDD-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed an opposition to the petitioner's application. *See* R. Docs. 8 and 9. There is no need for oral argument or for an evidentiary hearing.

On November 13, 2019, the *pro se* petitioner, an inmate confined at Louisiana State Penitentiary in Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2013 criminal conviction for Second Degree Battery and 2014 sentence, as a third felony offender, of life at hard labor, without benefit of parole, probation, or suspension of sentence. The petitioner asserts that he received ineffective assistance of counsel because his counsel failed to object to the issuance of a material witness warrant, and failed to introduce exculpatory evidence at trial. The petitioner additionally asserts that the State maliciously overcharged the offense in order to enhance his sentence.

**Procedural History**

On October 22, 2013, after a jury trial, the petitioner was found guilty of one count of second-degree battery. After being adjudicated a third felony offender, the petitioner was sentenced to a term of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence on September 23, 2014. The petitioner filed a direct appeal with the

Louisiana First Circuit Court of Appeal ("First Circuit"), arguing that the evidence was insufficient to convict him of second-degree battery, and that an improper material witness warrant was issued for the victim. The First Circuit affirmed the petitioner's conviction and sentence on September 18, 2015. The petitioner sought further review with the Louisiana Supreme Court which was denied on October 10, 2016.

On January 27, 2017, the petitioner filed an application for post-conviction relief ("PCR") asserting the same three claims asserted in the instant petition. The application was denied without an evidentiary hearing on July 28, 2017. On August 2, 2018, the petitioner filed for an extension of time file writs with the First Circuit which was denied by the trial court on August 21, 2018. The petitioner thereafter filed a writ application with the First Circuit on September 25, 2018. The First Circuit denied the writ application, on the merits, on January 11, 2019. The petitioner sought further review in the Louisiana Supreme Court which was denied on October 15, 2019. The instant petition was filed on November 13, 2019.

## Timeliness

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are no properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the

one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

The respondents argue that the petitioner's application is untimely because his 2018 writ application in the First Circuit was not timely filed, thus making the writ improperly filed. The respondents contend that the statute of limitations remained untolled from the time the trial court denied the petitioner's PCR on July 28, 2017 until the filing of his writ application on September 25, 2018, which alone exceeds the 365-day statute of limitations.

However, precedent indicates that the contested timeframe is tolled. The Fifth Circuit opinion in *Leonard v. Deville*, 960 F.3d 164, 170 (5th Cir. 2020) discussed the impact of an implicit extension of the return date. "[I]f the trial court 'impliedly' extends the 30-day period for seeking review in response to a prisoner's motion, then the prisoner's seeking a writ within the extended time suffices to keep his post-conviction process 'pending' under § 2244(d)(2)." *Id., citing Grillette v. Warden, Winn Corr. Ctr.,* 372 F.3d 765, 771-71 (5th Cir. 2004). The appellate court in *Leonard* granted the petitioner an extension of time in which to refile his writ application and the petitioner complied. The court noted that "if a prisoner receives extra time to seek review of the denial of his initial habeas application (and does so), then that application remains "pending." *Leonard*, 960 F.3d at 173.

Furthermore, *Grillette* also notes that Louisiana appellate courts routinely indicate when the denial of an application is based on untimeliness. *Id.* at 775. Here, the First Circuit did not indicate that it rejected the petitioner's writ application as untimely. Accordingly, the petitioner's PCR remained "pending" due to the implicit extension of the return date by the First Circuit signified by the review of his writ on the merits with no mention of untimeliness.

The petitioner's conviction became final on October 10, 2016, which was 90 days after the denial of writs by the Louisiana Supreme Court. The petitioner filed his PCR only 19 days later, and his PCR remained pending until writs were denied by the Louisiana Supreme Court on October 15, 2019. The instant petitioner was filed less than a month later on November 13, 2019. As less than a year elapsed during which the petitioner did not have any properly filed applications for post-conviction or other collateral review pending before the state courts, the petitioner's application is timely.

## Exhaustion and Procedural Default

The respondents argue that the petitioner's Claim 3, that the State maliciously overcharged the offense, is procedurally barred because it is unexhausted. Respondents argue that this claim was presented to the state courts relying exclusively on Louisiana statutes and case law, consequently the petitioner never fairly presented a federal claim in the state courts.

A habeas applicant must claim a violation of a federal constitutional right. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."); *Narvais v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

Petitioner's memorandum filed with this court cites two federal cases in support of his claim that the prosecutor overcharged him in order to enhance his sentence. But the body of his memorandum is largely a repeat of the same state-law arguments that he made in his PCR application, and subsequent writ applications in the state courts. The exhaustion requirement is based on the statutory provision that a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The requirement is designed to give the state courts a first opportunity to correct alleged violations of federal rights. *Baldwin v. Reese*, 541 U.S. 27 (2004). To satisfy it, a prisoner must fairly present his federal claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting the state courts to the federal nature of the claim. *Id*.; O'Sullivan v. Boerckel, 528 U.S. 838, 844 (1999).

State courts are obligated to enforce federal law, so "they must be given the first chance—after the state prisoner fully explains the federal claim—to correct any error." *Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021). The federal claim must be fairly presented to the state courts to allow them that opportunity, and a prisoner may not change the nature of his claim from state to federal law along the way. *Lucio* cited the example of *Duncan v. Henry*, 513 U.S. 364, where the petitioner framed his objection in state court in terms of state evidentiary law, but in the federal courts he argued that the erroneous introduction of the evidence violated the Due Process Clause. The Supreme Court held that the petitioner did not properly exhaust his Due Process Clause claim, even if he presented the state court with the facts and substance of his claim in other terms.

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts

that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996). And "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 163. The determination of whether a federal claim was fairly presented to the state courts is made by looking to the petitioner's briefs filed in state court (rather than the state court's decision). *Dye v. Hofbauer*, 546 U.S. 1 (2005); *Smith v. Digmon*, 434 U.S. 332 (1978).

Petitioner's PCR application, as well as his writ applications to the First Circuit and the Supreme Court of Louisiana relied solely upon state law decisions that applied state procedural laws. As such, the petitioner did not fairly present a federal claim to the state court that would satisfy the requirement to exhaust state court remedies.

If Petitioner were to return to state court and attempt to properly exhaust this claim, his PCR application would not be considered pursuant to Louisiana Code of Criminal Procedure article 930.4(E), which provides: "A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application." As the United States Fifth Circuit Court of Appeal has recognized, Louisiana Code of Criminal Procedure article 930.4(E) constitutes an independent and adequate state-law procedural ground to support a procedural bar to review. *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4–5 (5th Cir. 2001); *Besse v. Tanner*, Civ. Action No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2017); *Bell v. Baton*, Civ. Action No. 11-0304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), *adopted*, 2012 WL 5364237, at *1 (M.D. La. Oct. 31, 2012) (concluding that Article 930.4(E) has been found to be an adequate, independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied upon this statute in finding claims to be technically exhausted but procedurally defaulted).

In such cases, the federal court is to treat the issue as technically exhausted but subject to a procedural bar that cannot be overcome absent the showing of cause for the default and prejudice, or a fundamental miscarriage of justice. *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016); *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998). "To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999). There are no such apparent causes for Petitioner's election to present this claim in terms of state law rather than federal law.

To satisfy the fundamental miscarriage of justice exception, a petitioner must make a persuasive showing that he is actually innocent of the charges against him. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The Petitioner is not asserting a claim of actual innocence herein. As such, Claim 3 is procedurally barred from review due to Petitioner's failure to exhaust state court remedies with respect to a federal claim and the lack of a showing adequate to overcome the resulting procedural bar. Accordingly, the Court will only consider Claims 1 and 2 on the merits.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a

conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: On December 15, 2011, Missouri Marie Boston (the victim) called 911 after being physically attacked by the petitioner, her boyfriend with whom she resided in a Baton Rouge apartment complex. During the recorded 911 call, the victim stated that the petitioner had badly beaten her. She indicated that he had broken her arm, "split" her ear, "bust" her head, and bruised her. The 911 recording continued as officers of the Baton Rouge Police Department responded to the scene. Upon arrival, the police immediately detained the petitioner (he was handcuffed and placed in the police car), and police then made contact with the victim. Emergency Medical Services (EMS) also arrived on the scene, and the victim received medical

care. The EMS report confirmed that the victim sustained facial trauma, and her left forearm was bruised, swollen, deformed, and dislocated/fractured. Additionally, the victim's head was bruised with soft tissue swelling. *State v. Jones,* 2015 WL 65516166, 2015-0202 (La. App. 1 Cir. 9/8/15).

## Substantive Review

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is

given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

*Failure to Object to Material Witness Warrant*

In Claim 1 the petitioner asserts that his counsel was ineffective for failing to object to the issuance of a material witness warrant for Missouri Marie Boston (the victim). However, petitioner cannot show a reasonable probability that, but for his counsel's alleged error, the result of the proceeding would have been different.

At the time the crime was committed on December 15, 2011, Louisiana Revised Statute 15:257 provided as follows:

> Whenever it shall appear, upon motion of the district attorney or upon motion of a defendant supported by his affidavit, that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and it is shown that it may become impracticable to secure the presence of the person by subpoena, a judge, as defined in Article 931 of the Code of Criminal Procedure, shall issue a warrant for the arrest of the witness. The witness shall be arrested and held in the parish jail, or such other suitable place as shall be designated by the court, until he gives an appearance bond as provided for defendants when admitted to bail, or until his testimony shall have been given in the cause or dispensed with.

The motion prepared by ADA Melanie S. Fields alleged that the victim told her and the Victim Assistant Coordinator that she was afraid to cooperate with the prosecution due to her fear of the petitioner. The motion further asserted that Ms. Boston had written a letter to the petitioner's attorney where she recanted, and thereafter all available resources were used to locate the victim to no avail. The State believed the victim was avoiding service due to her fear of the petitioner. Under such circumstances, the trial judge was required to issue a warrant for the arrest of Ms. Boston as it was impracticable to secure the presence of the victim at trial by subpoena. As such, any objection by the petitioner's counsel would have not been successful if made. There was no error to be preserved for appeal. Accordingly, the petitioner cannot show but for his counsel's alleged failure to object, the result of the proceeding would have been different. This claim is without merit.

*Failure to Introduce Letters from the Victim*

In Claim 2, the petitioner asserts that his counsel was ineffective for failing to introduce numerous letters from the victim to the petitioner, written after his arrest in December of 2011. These letters are hearsay. The petitioner classifies the letters as exculpatory evidence. However, the contents of the letters could pertain to the victim's credibility. Louisiana Code of Evidence article 613 provides:

> Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of

capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.

As such, if petitioner's counsel had asked the victim if she had written letters to the petitioner and the victim denied writing such letters or denied statements contained in the letters, then the letters could have been referenced in order to attack the victim's credibility. If the victim had admitted to writing the letters or making the statements, then said letters would not have been admissible. As such, there was no guarantee that the letters could have been introduced to attack the victim's credibility. Nor was there a possibility that introduction of the letters would have altered the outcome of the trial.

The petitioner cannot show that his counsel's decision to not introduce or question the victim about the letters was not part of a reasonable trial strategy since the letters do not offer any exculpatory evidence. The fact that the victim made conflicting statements, and why she explained she did so, was thoroughly examined at trial. It was discussed in both direct and cross examination. Counsel for the petitioner cross-examined the victim with regards to the letter she wrote to the petitioner's counsel wherein she recanted. The victim maintained that she had written the letter at the petitioner's request because she was afraid of him. While the victim did not have the letter wherein the petitioner made his request, introduction of the victim's other letters would have made it clear that the victim was responding to letters sent to her by the petitioner. For example, in one letter written by the victim to the petitioner she states, … "so please stop asking me the same thing," which indicates that the victim was responding to one or more prior communications from the petitioner. The victim's letters also give credibility to her testimony that she was afraid of the petitioner. In various letters she states, "don't be mad," "don't get mad with me," and "don't get mad please." *See* R. Doc. 1-5, p.1, 9, and 20.

Moreover, shortly after the incident the victim sent a letter to the petitioner wherein she stated, "I don't no why but I [for]give you and you [k]no[w] that." *See* R. Doc. 1-5, p. 4. This letter indicates that the petitioner had recently done something for which the victim was forgiving him. It would be reasonable for a juror to assume the victim was referring to the battery on December 15, 2011 due to the time of the letter. In another letter the victim wrote, "you don't have to worry am not signing anything testify against you so don't worry." *See* R. Doc. 1-5, p 10. As such, these letters are indicative of the petitioner's guilt, and do little to harm the credibility of the victim. Additionally, the jury had already heard the 911 call where, as noted by the trial court commissioner, the plaintiff could be heard ranting in the background saying that the victim "ain't sh—" and that she was a "mother f---ing ho." The 911 call was sufficient on its own to overcome any of the victim's credibility issues.

Accordingly, the petitioner cannot show that his counsel's decision to not introduce or question the victim about the letters was not part of a reasonable trial strategy, or the probability that his counsel's alleged errors were sufficient to undermine confidence in the outcome. This claim is without merit, and the petitioner's application for habeas corpus relief should be denied.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas

petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 9, 2023.

 **RICHARD L. BOURGEOIS, JR.**
 **UNITED STATES MAGISTRATE JUDGE**